**[J-85-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 10 EAP 2020 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on |
| | : | 07/11/2019 at No. 1670 EDA 2017 |
| v. | : | (reargument denied 08/28/2019) |
| | : | affirming vacating and remanding |
| | : | the Judgment of Sentence entered |
| KHALID EID, | : | 04/26/2017 in the Court of Common |
| | : | Pleas, Philadelphia County, Criminal |
| Appellant | : | Division at No. CP-51-CR-0003605- |
| | : | 2016. |
| | : | |
| | : | ARGUED:  October 20, 2020 |


**OPINION**


**JUSTICE WECHT**                                    **DECIDED:  April 29, 2021**

This case presents constitutional challenges to the Vehicle Code's[1] enhancement of sentences for those who refuse chemical testing after driving under a suspended license ("DUS").  Although we conclude that the evidence was sufficient to sustain Khalid Eid's conviction for refusing to submit to a warrantless breath test—which, unlike a warrantless blood draw, does not violate established constitutional safeguards against unreasonable searches and seizures—we vacate his sentence of imprisonment because the sentencing statute in question fails to specify a maximum term, and thus is unconstitutionally vague in contravention of state and federal due process principles.

---

[1]     75 Pa.C.S. § 101, *et seq.*

## I.

At approximately 11:30 p.m. on February 25, 2015, Philadelphia Police Officer Stephen Nagy observed a black Nissan parked on a one-way street with its engine still running. The Nissan previously had collided with two parked cars and was facing the wrong direction. Notes of Testimony ("N.T."), 3/2/2016, at 6-8. Officer Nagy approached the Nissan and asked the driver, Eid, for his driver's license, registration, and proof of insurance. Eid appeared disheveled, his eyes were red and glassy, he smelled of alcohol, and he had a difficult time retrieving the requested items from his back pocket. Officer Nagy asked Eid to step out of the vehicle. When Eid opened the door, Officer Nagy smelled "a moderate odor of an alcoholic beverage emanating from the vehicle and [Eid's] person." *Id.* at 7-8. Eid handed his license and registration to Officer Nagy. Eid's license was suspended. *Id.* at 23-24, 25.

Officer Nagy called for a wagon to transport Eid to the Accident Investigation District ("AID") for chemical testing. As they waited, Eid urinated on himself. At approximately 1:40 a.m., following Eid's transfer to AID, Officer Gary Harrison encountered Eid and read the *O'Connell* warnings to him.[2] At Eid's first trial, Officer Harrison gave the following account of his interaction with Eid:

> He was polite, quiet. He had bloodshot, watery eyes. He had a wet stain on his pants that he had urinated on himself. He had low speech, whispering. He was sweating. He moved slowly. His pupils were dilated in room light. He had a moderate odor of an alcoholic beverage on his breath.
>
> He had a lot of marijuana debris also, Your Honor, in his mouth. And he had marijuana debris on his tongue, which also indicated to me, Your Honor, that he did smoke recently.

---

[2] *See Pa. Dep't of Transp. v. O'Connell*, 555 A.2d 873, 876 (Pa. 1989) (requiring warnings to be read to motorists so that they may make a knowing and conscious decision whether to submit to chemical testing).

He refused immediately, Your Honor, when he came in the room and then said "whatever you want." I told him it's his decision. Then he said "no test."

Again, I read him the *O'Connell* Warnings and the 75-439. He signed them and said no to the test. I read him the DL-26. Again, he said no to the test. I asked him two more times at the nurse's station. And, again, he said no. And, again, he did sign all forms.

At 2:03 a.m., Your Honor, based on him repeatedly saying no to the test, I deemed him to be a refusal. And I did offer him – initially, I offered him a breath or a blood. Then after I noticed the marijuana, it was a blood test that he refused.

*Id.* at 18-19.[3]

Eid was charged with several offenses for driving under the influence ("DUI"), one of which subjected him to elevated penalties due to his refusal to submit to chemical testing, along with a single count of DUS pursuant to 75 Pa.C.S. § 1543(a).[4] Following a bench trial on March 3, 2016, in the Municipal Court of Philadelphia, Eid was convicted on all charges. At a sentencing hearing on April 12, defense counsel asked the court to impose "the mandatory minimum which is 90 days to six months," with immediate parole. N.T., 4/12/2016, at 4. Instead, the court imposed, *inter alia*, an aggregate sentence of one to two years' imprisonment, a $2,500 fine, and an eighteen-month license suspension. *Id.* at 6.

Eid appealed, and proceeded to a *de novo* bench trial before the Honorable Paul P. Panepinto in the Court of Common Pleas on December 5, 2016. At the beginning of

---

[3] Included in the certified record is a copy of the DL-26 implied consent form signed by Eid, which depicts a circle drawn around the words "blood, breath" and a slash mark through "breath." There was no testimony as to who made the slash mark or its significance.

[4] Specifically, Eid was charged with three counts of DUI-general impairment under 75 Pa.C.S. § 3802(a)(1), two of which included sentencing enhancements: one due to the vehicle damage caused by the accident, *see id.* § 3803(b)(1), and one due to Eid's chemical test refusal, *see id.* § 3803(b)(2).

the trial, the Commonwealth stated that, notwithstanding the charge listed in the initial criminal information, it would be prosecuting the DUS offense under 75 Pa.C.S. § 1543(b)(1.1)(i), rather than subsection (a).[5] The Commonwealth amended the information accordingly.

The applicable subsection of the DUS statute determines the permissible range of sentences available upon conviction. Subsection 1543(a) relates generally to driving with a suspended or revoked license, and prescribes a penalty of a $200 fine. *Id.* § 1543(a). Subsection 1543(b) applies when the license suspension resulted from a previous DUI offense. It prescribes an elevated penalty: a $500 fine and a term of imprisonment not less than sixty days nor more than ninety days. *Id.* § 1543(b). Subsection 1543(b)(1.1)

---

[5]    Subsection 1543(b)(1.1)(i) provides:

> A person who has an amount of alcohol by weight in his blood that is equal to or greater than .02% at the time of testing or who at the time of testing has in his blood any amount of a Schedule I or nonprescribed Schedule II or III controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or its metabolite or who refuses testing of blood or breath and who drives a motor vehicle on any highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 or former section 3731 or because of a violation of section 1547(b)(1) or 3802 or former section 3731 or is suspended under section 1581 for an offense substantially similar to a violation of section 3802 or former section 3731 shall, upon a first conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for a period of not less than 90 days.

75 Pa.C.S. § 1543(b)(1.1)(i). Notably, the General Assembly has not yet amended this subsection in response to *Birchfield*, as it has for other statutes that provided for an enhanced penalty based upon the refusal of a warrantless blood test. *Compare* 75 Pa.C.S. § 3804(c) ("An individual who violates section 3802(a)(1) and refused testing of breath . . . or **testing of blood pursuant to a valid search warrant** . . ."), *with* former 75 Pa.C.S. § 3804(c), effective July 9, 2012, to July 19, 2017, ("An individual who violates section 3802(a)(1) and **refused testing of blood** or breath . . .") (emphases added).

sets forth a further elevated tier of punishment: a fine of $1,000 and a ninety-day minimum term of imprisonment, applicable when the motorist drove with a DUI-related suspended license and has a blood alcohol concentration of at least .02%, or any amount of a controlled substance in his blood, or "refuses testing of blood or breath." *Id.* § 1543(b)(1.1)(i). This latter sentencing provision presently is at issue.

Following an evidentiary presentation similar to that developed in the Municipal Court, the trial court convicted Eid on all charges.[6] N.T., 12/5/2016, at 31. Sentencing was deferred until April 26, 2017, at which time the case was transferred to the Honorable Pamela P. Dembe. The sentencing court merged Eid's DUI convictions and imposed a term of ninety days to six months' imprisonment (to be served on weekends), plus two years' probation and a $2,500 fine. As to the DUS conviction, the court imposed an identical term of imprisonment and probation, to be served concurrently with the DUI sentence, and an additional $1,000 fine. N.T. 4/26/2017, at 8-11.

Eid appealed to the Superior Court. In his Pa.R.A.P. 1925(b) statement, he argued, in relevant part, that the applicable DUS statute, 75 Pa.C.S. § 1543(b)(1.1)(i), contains a provision rendered unconstitutional by the Supreme Court of the United States' decision in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S.Ct. 2160 (2016), because it penalizes the refusal to submit to a warrantless blood test.[7] Eid further contended that his sentence for DUS was illegal because it exceeded ninety days, which he understood to be the statutory maximum term. The sentencing court's opinion, which was authored

---

[6]     The Commonwealth moved to introduce the transcripts from Eid's first trial, specifically as they pertained to Officer Harrison's testimony, in light of that officer's death following Eid's conviction. N.T., 12/5/2016, at 4-5, 22-23.

[7]     *Birchfield* held that, although warrantless breath tests constitutionally may be compelled under the search incident to arrest doctrine, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S.Ct. at 2186.

by a judge other than the one who presided over Eid's trial, addressed only the first of these claims. The authoring judge concluded that *Birchfield* was inapplicable because Eid also refused a breath test. *See* Tr. Ct. Op., 12/28/2017, at 4-5 (unpaginated). The trial court did not address the range of permissible sentences.

In a unanimous memorandum, the Superior Court vacated Eid's judgment of sentence and remanded for resentencing. *Commonwealth v. Eid*, 1670 EDA 2017, 2019 WL 3046587 (Pa. Super. July 11, 2019). Eid challenged the sufficiency of the evidence with respect to both the DUI and DUS offenses, asserted that the portion of the DUS statute penalizing warrantless blood test refusals is unconstitutional under *Birchfield*, and argued that his sentences for both DUS and DUI were illegal because they exceeded the statutory maximum penalties.

The court concluded that the evidence was sufficient to sustain Eid's convictions for both DUI and DUS. With regard to DUI, the court deemed Officer Nagy's testimony describing Eid's apparently intoxicated state sufficient to establish that Eid was unable to safely operate a vehicle, thereby satisfying the elements of DUI-general impairment under 75 Pa.C.S. § 3802(a)(1). As for DUS, the court observed that the record included "evidence of [Eid's] refusal to take a blood test," and thus was sufficient to sustain his conviction under 75 Pa.C.S. § 1543(b)(1.1)(i). *Eid*, 2019 WL 3046587, at *4.

The panel rejected Eid's *Birchfield* argument because he had advanced it under the banner of a sufficiency challenge to his DUS conviction. *Id.* ("*Birchfield* addresses suppression issues and sentencing issues, but not challenges to the sufficiency of the evidence."). The Superior Court deemed *Birchfield* "not relevant in evaluating the sufficiency of the evidence in this case." *Id.*

However, the court agreed with Eid that, due to the length of the probationary tails imposed, his sentences for both DUI and DUS exceeded the statutory maximums. A

sentencing court may impose a split sentence including both incarceration and probation, the panel noted, but "the total amount of time imposed in a split sentence cannot exceed the statutory maximum." *Id.* at *6 (citing *Commonwealth v. Crump*, 995 A.2d 1280, 1283-84 (Pa. Super. 2010)).  The court observed that the statutory maximum sentence for Eid's merged DUI offenses was six months, *see* 75 Pa.C.S. § 3803(b)(1), (2), whereas the sentencing court imposed a sentence of ninety days to six months' imprisonment *plus* a two-year probationary term.

The court likewise determined that the statutory maximum for DUS also was six months.  The panel recognized that 75 Pa.C.S. § 1543(b)(1.1)(i) contains no express statutory maximum penalty, only a minimum term of ninety days' imprisonment.  *See Eid*, 2019 WL 3046587, at *6 n.11.  Despite the absence of a specific statutory maximum for this offense, the court nonetheless gleaned a six-month maximum from 75 Pa.C.S. § 6503(a), which sets a maximum term of imprisonment of six months for an individual "convicted of a second or subsequent violation" of, *inter alia*, 75 Pa.C.S. § 1543(a). Because the sentencing court imposed a sentence of ninety days to six months' imprisonment *plus* a two-year probationary term, the probation tails caused both sentences to exceed the lawful maximum.  Thus, the Superior Court concluded that Eid's sentence was illegal.  Accordingly, the court vacated the sentence and remanded for resentencing.

## II.

We granted allowance of appeal in order to assess the constitutionality of Eid's sentence under 75 Pa.C.S. § 1543(b)(1.1)(i).[8]  A constitutional challenge to a sentencing

---

[8]    Specifically, we granted review of the following questions, as framed by Eid:

> (1) Is Petitioner's sentence under 75 Pa.C.S. § 1543(b)(1.1)(i) illegal because the statute is unconstitutional under *Birchfield v. North Dakota*, ___ U.S. ___, 136 S.Ct. 2160 (2016), Article I, Section 8, due process, and this

statute presents a question of law, which we review *de novo*. *Commonwealth v. Bell*, 211 A.3d 761, 765 (Pa. 2019).

**A.**

Eid first claims that his sentence is illegal because the statute at issue imposes criminal penalties for refusing to submit to a warrantless blood draw. As a threshold matter, he concedes that his argument presumes a "favorable resolution of the factual dispute that his refusal was based upon the rejection of a request to submit to a blood test." Eid's Brief at 13 n.11. Eid correctly claims that, in light of *Birchfield*, his conviction and sentence pursuant to 75 Pa.C.S. § 1543(b)(1.1)(i) would be unlawful to the extent that his punishment was predicated solely upon his refusal to consent to a warrantless blood test. *See Birchfield*, 136 S.Ct. at 2185-86; *see also Commonwealth v. Monarch*, 200 A.3d 51, 57 (Pa. 2019). However, as the Commonwealth aptly observes, the record supports Eid's conviction for refusing a breath test, which *Birchfield* categorically excluded from the Fourth Amendment's warrant requirement as a permissible search incident to arrest.[9] *Birchfield*, 136 S.Ct. at 2184 (concluding "that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving"); *id.* at 2185 ("Because breath tests are significantly less intrusive than blood tests and in most cases serve law enforcement interests, we conclude that a breath test, but not a blood test, may be

---

Court's precedents because it increases the punishment for a criminal offense based upon the refusal to submit to a warrantless blood test?

(2) Is Petitioner's sentence ordered by a three judge Panel of the Superior Court under 75 Pa.C.S. § 1543(b)(1.1)(i) illegal because the statute is unconstitutionally vague in that it fails to provide for a maximum penalty, and therefore, any sentence above a 90 [day] flat sentence violates the state and federal Due Process Clauses?

*Commonwealth v. Eid*, 226 A.3d 566 (Pa. 2020) (*per curiam*).

[9]     To the extent that the Superior Court affirmed Eid's conviction because he refused blood testing, that court erred in overlooking *Birchfield*'s prohibitions.

administered as a search incident to a lawful arrest for drunk driving.  As in all cases involving reasonable searches incident to arrest, a warrant is not needed in this situation.").

The notes of testimony from Eid's first trial, which were introduced at his subsequent prosecution, confirm that he refused *both* blood and breath testing roughly half a dozen times between 1:40 a.m. and 2:03 a.m. on February 26, 2015, shortly after being transferred to AID.  As the late Officer Harrison recounted, upon entering the room where the officer waited to process him, Eid—unprompted—initially refused all testing. Eid refused again after Officer Harrison read him the *O'Connell* warnings and 75-439 Report for Chemical Testing.  *See* N.T., 3/2/2016, at 18, 19 ("He signed them and said no to the test.").  He refused once more after being read the DL-26 form, on which the words "breath" and "blood" were handwritten on a blank line next to a prompt indicating the specific tests requested by the officer.  And then he refused twice at the nurses' station.

Although Officer Harrison indicated that he offered Eid a blood test after noticing marijuana debris in Eid's mouth, significantly—and fatal to Eid's presumption—the signed DL-26 form corroborates Officer Harrison's testimony that Eid also specifically refused breath testing.  Eid thus was "provided with an opportunity to make a 'knowing and conscious choice' between providing voluntary consent to a chemical test"—pertinently, of his breath—"or accepting the consequences that will follow from the refusal to do so." *Commonwealth v. Myers*, 164 A.3d 1162, 1180-81 (Pa. 2017).  That evidence was sufficient to sustain Eid's conviction pursuant to subsection 1543(b)(1.1)(i) for refusing a breath test.  Neither *Birchfield* nor the other grounds asserted in Eid's first question

presented for review compels us to reverse that determination under these circumstances.[10]

## B.

Turning to the second issue, Eid contends that the sentencing provision in subsection 1543(b)(1.1)(i) "is illegal because the Legislature failed to provide a clear statutory maximum penalty applicable to the crime rendering the permissible range of sentences unconstitutionally vague in violation of due process under both the

---

[10] We recognize that a reasonable argument could be made that our recent decision in *Monarch* entitles Eid to relief. However, *Monarch* is distinguishable. There, the trial court instructed the jury to "make a finding [whether Monarch] did not or did refuse testing of blood" following his DUI arrest. 200 A.3d at 53 (quoting N.T., 2/12/2016, at 317). When the jury found Monarch guilty and determined that he had refused a blood test, the court imposed a mandatory minimum term of imprisonment. We vacated the judgment of sentence in light of *Birchfield*'s rule that a warrantless blood draw, when compelled on pain of criminal punishment, violates the Fourth Amendment. We also rejected the Superior Court's conclusion that the sentence was lawful on alternative grounds because Monarch had refused breath testing. That was so, we reasoned, notwithstanding the presumptive constitutionality of warrantless breath testing under *Birchfield*, because "the question of whether [Monarch] refused breath testing *was not submitted to the jury*," and, thus, "any sentence based on such a refusal [would be] unconstitutional in violation of *Alleyne*" *v. United States*, 570 U.S. 99, 103 (2013) (holding that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt"). *Monarch*, 200 A.3d at 57-58 (emphasis added). Accordingly, because the fact-finder was not asked whether Monarch had refused breath testing, and therefore did not make such a finding beyond a reasonable doubt, we concluded that "there was no legal basis for [Monarch's] enhanced mandatory minimum sentence." *Id.* at 58.

*Monarch* thus stands for the proposition that, when a jury is available to make factual findings in the first instance upon which a particular conviction or sentence might turn, neither the trial court nor a reviewing court may resolve, *post hoc*, unanswered questions of fact. While facts that trigger sentencing enhancements constitute elements of the underlying crimes and need to be found beyond a reasonable doubt at trial regardless of whether the fact-finder is a judge or jury, *see, e.g.*, *Commonwealth v. Bizzel*, 107 A.3d 102, 105 (Pa. Super. 2014); *Commonwealth v. Cardwell*, 105 A.3d 748, 750-51 (Pa. Super. 2014); *Commonwealth v. Fennell*, 105 A.3d 13, 16 (Pa. Super. 2014); *Commonwealth v. Munday*, 78 A.3d 661, 666 (Pa. Super 2013), whether *Alleyne* requires more of a trial court sitting as fact-finder is an open question. As we are without developed advocacy on that issue, we ought not attempt to resolve it today.

Pennsylvania and Federal Constitutions." Eid's Brief at 18. He observes that both the Supreme Court of the United States and this Court have held that vague sentencing provisions violate due process because such provisions deprive a person of liberty without fair notice of the consequences of their actions. *Id.* at 18-19 (citing *Michigan v. Long*, 463 U.S. 1032 (1983); *Commonwealth v. Bell*, 645 A.2d 211, 215 n.9 (Pa. 1994) ("We believe that fairness [under the independent tenets of the Commonwealth's due process principles] requires that a defendant be notified of the maximum sentence he could face for committing a particular offense.")). Eid posits that a court cannot fill in the gaps of a vague sentencing statute where the General Assembly "has abdicated its duty to define the maximum range of a penalty." *Id.* at 20 (citing *Commonwealth v. Derhammer*, 173 A.3d 723, 733 (Pa. 2017) (Wecht, J., concurring) (explaining that the judiciary is not empowered to rewrite the law by guessing what the General Assembly might do)).

Eid asserts that any interpretation of the DUS statute that would impose a maximum term of more than ninety days' imprisonment for refusing chemical testing is constitutionally infirm. However, pointing to the statute's mandatory $1,000 fine for a DUS conviction under the same provision, Eid also claims that, had the Legislature intended to direct courts to impose a mandatory ninety-day flat sentence, it would have said so directly. An express directive would have been necessary, in his view, to overcome the Sentencing Code's general rule that each criminal sentence be indeterminate, with a minimum term that is no greater than half of its maximum term. *See* 42 Pa.C.S. § 9756(b)(1). Additionally, Eid notes that the General Assembly's express invocation of a minimum and maximum sentencing range for the general DUS provision in subsection 1543(b)(1)(i) (providing that a violator "shall be sentenced to pay a fine of $500 and to undergo imprisonment for a period of not less than 60 days nor more than 90

days") demonstrates its ability to use that limiting phrase. The General Assembly's failure to do so in subsection 1543(b)(1.1)(i), Eid argues, is glaring. Eid's Brief at 30-35.

The Commonwealth counters that the DUS statute can be read so as to mandate a minimum sentence of ninety days with a maximum term not to exceed six months. In its view, as applied to a sentencing provision, the phrase "not less than" plainly sets the lower end of a mandatory sentencing range. Commonwealth's Brief at 15 (citing subsection 1543(b)(1.1)(ii)-(iii) (grading second and subsequent DUS violations as misdemeanors punishable by terms of imprisonment "not less than six months" and "not less than two years," respectively)); *see also id.* at 16-17 (citing *Commonwealth v. O'Brien*, 514 A.2d 618, 620 (Pa. Super. 1986) ("The words 'not less than' used in the statute unambiguously connote a minimum term of imprisonment. It strains all notions of common sense to suggest that 'not less than' can reasonably be interpreted as meaning 'maximum.'")).

In support of its position, the Commonwealth cites *Commonwealth v. Koskey*, 812 A.2d 509 (Pa. 2002), in which this Court reviewed a sentence imposed under a prior version of subsection 1543(b)(1) (relating to DUS-DUI generally). At the time, paragraph (b)(1) mandated a sentence of "not less than 90 days" upon conviction. In affirming a flat ninety-day sentence under the predecessor statute to subsection 1543(b)(1.1)(i), the Court found that "'the plain language of the statutory scheme required sentencing courts to adhere to the mandatory minimum sentencing guidelines for violations of Section 1543(b)(1).'" Commonwealth's Brief at 17-18 (quoting *Koskey*, 812 A.2d at 511); *see also Commonwealth v. Yale*, 657 A.2d 987, 988 (Pa. Super. 1995) ("[A] violation of 75 Pa.C.S. § 1543(b) requires a mandatory minimum sentence of ninety days imprisonment, plus fines."). The Commonwealth notes that the same penalty term found in paragraph (b)(1) was later included in paragraph (b)(1.1)(i)

when Section 1543 was amended in 2002. Thus, the Commonwealth asserts that *Koskey*'s holding should apply to the successor statute's indistinguishable language. *Id.* at 18 (citing *Hous. Auth. of Cty. of Chester v. Pa. State Civil Serv. Comm'n*, 730 A.2d 935, 946 (Pa. 1999) ("When the meaning of a word or phrase is clear when used in one section, it will be construed to mean the same thing in another section of the same statute.")).

The absence of an express maximum penalty for a first violation of subsection 1543(b)(1.1)(i) does not invalidate the statute, the Commonwealth claims, because, when read in conjunction with Section 6503 of the Vehicle Code (relating to subsequent convictions for certain offenses), a statutory limit of six months' imprisonment may be inferred where a maximum sentence for a summary DUS-DUI offense is unspecified. The Commonwealth points to the statutes' historical development, which it believes demonstrates that the maximum term for a summary DUS violation under Section 1543(a) also covers summary DUS-DUI offenses under Section 1543(b). Commonwealth's Brief at 19. Specifically, Section 6503 mandates that a person who commits a second or subsequent DUS violation under Section 1543(a)—a summary offense—may be sentenced to a term of imprisonment "'of not more than six months.'" *Id.* at 20 (quoting 75 Pa.C.S. § 6503(a)-(a.1)). Positing that Subsection 1543(b)(1.1)(i), which grades a first DUS violation as a summary offense, cannot be considered in isolation from the penalty provision of Section 6503, the Commonwealth concludes that Section 6503's six-month maximum should also apply to paragraph (b)(1.1). *Id.*

As the Commonwealth recounts, prior to December 3, 2002, the recidivist penalties under Section 6503 were not limited to repeat offenders of Section 1543(a). Instead, the former version of Section 6503 called for terms of "'imprisonment for not more than six months'" for all second or subsequent convictions under Section 1543. *Id.* (quoting Act of Dec. 21, 1998, P.L. 1126, No. 151, § 58). A 2002 amendment narrowing

Section 6503's express terms to violations of Section 1543(a) was adopted in the same bill that created paragraph (b)(1.1). *Id.* at 21 (citing P.L. 845, No. 123, §§ 3, 10.1). The Commonwealth notes that the legislation left intact the mandatory penalty of "not less than 90 days" for DUS-DUI violations under subsection 1543(b)(1)—identical to the penalty mandated under the newly-enacted paragraph (b)(1.1)(i)—without stating an explicit maximum term for subsequent violations. The Commonwealth claims that these simultaneous amendments to Sections 1543(b) and 6503 reveal the General Assembly's intent that the statutory maximum penalty for a summary offense under both subsections 1543(b)(1) and (b)(1.1)(i) be six months. The Commonwealth asserts that a contrary interpretation would result in individuals who commit multiple DUS-DUI offenses under subsection 1543(b)(1), as well as first-time offenders of paragraph (b)(1.1), being sentenced to *less* severe penalties than those who commit multiple offenses under the arguably less serious Section 1543(a), where the license suspension is unrelated to a DUI. *Id.* at 21.

The evolution of the DUS statutes thus demonstrates that the language in Section 6503 was limited to violations of Section 1543(a), the Commonwealth claims, simply because the General Assembly already understood that the statutory maximum penalty for a violation of paragraphs (b)(1) and (b)(1.1)(i) was six months' imprisonment. *Id.* at 22 (citing *Bell*, 645 A.2d at 217-18 (holding that statute setting forth mandatory sentences was not unconstitutionally vague, although the statute provided no maximum sentences, where sentences which "further[ed] the intent of the legislature" could be reasonable inferred from other statutory provisions)). Although the penalty under paragraph (b)(1) has since been amended, the Commonwealth again notes that the language in paragraph (b)(1.1)(i) was left unchanged. *Id.* at 23.

The Commonwealth also contests Eid's assertion that Section 1543 of the Vehicle Code is subject to the Sentencing Code's general requirement of minimum-maximum sentencing. *Id.* at 24. Section 1543 is not subject to that rule, the Commonwealth claims, because the implied six-month maximum sentence complies with constitutional limits for summary traffic offenses. *Id.* (citing *Baldwin v. New York*, 399 U.S. 66, 69 (1970) ("[N]o offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized.")). In that regard, the Commonwealth rightly observes that Section 6503 was amended in 1986 to reduce the maximum sentence from one year to six months in order to bring it within the constitutional limit announced in *Baldwin*. *Id.* at 24-25 (citing *Commonwealth v. Sperry*, 577 A.2d 603, 605 n.3 (Pa. Super. 1990) (*en banc*) ("Following the 1986 amendment, the statute, [Section 6503,] provided for a maximum prison term of six months, to comply with the decision in *Baldwin v. New York*.")); *see also Blanton v. Cty. of N. Las Vegas*, 489 U.S. 538, 543-45 (1989) (holding that offenses carrying a maximum prison term of six months or less are presumed to be "petty" for purposes of the Sixth Amendment, therefore a DUI offense providing a maximum penalty of six months' imprisonment and a $1,000 fine was presumed to be a petty offense and did not entitle violators to a jury trial).

Lastly, the Commonwealth suggests that Eid's reliance upon the Sentencing Code's general rule of indeterminate sentences is misplaced here because the Vehicle Code establishes a separate sentencing scheme for summary DUS-DUI offenses. *See* Commonwealth's Brief at 25 (quoting *Bell*, 645 A.2d at 217 (noting that although "the minimum-maximum rule of [Section] 9756(b) is a longstanding concept in our Commonwealth, it is a statutory and not a constitutional provision")). The Commonwealth concludes that Section 9756(b)'s general rule must yield to the specific provision of

Section 9756(c.1), which authorizes flat sentences for DUS-DUI offenders. Commonwealth's Brief at 27 n.14.

With the preceding arguments in mind, we begin by reiterating the longstanding precept that legislative enactments are presumed to be constitutional. One who challenges the constitutionality of a statute bears a heavy burden of persuasion. *Commonwealth v. Mikulan*, 470 A.2d 1339, 1340 (Pa. 1983). "Accordingly, legislation will not be declared unconstitutional unless it 'clearly, palpably and plainly' violates the constitution." *Id.* (citation omitted).

Eid asserts that the DUS statute under which he was sentenced lacks a statutory maximum penalty, and thus is unconstitutionally vague in violation of state and federal due process principles. Generally speaking, in criminal matters, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). It is well-settled that vague sentencing provisions violate due process where they fail to provide offenders with fair notice of the consequences for a particular crime. *Johnson v. United States*, 576 U.S. 591, 595-96 (2015) ("The prohibition of vagueness in criminal statutes . . . appl[ies] not only to statutes defining elements of crimes, but also to statutes fixing sentences.") (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979)).

We begin, as we must, with the statute's text. In pertinent part, a person who drives with a suspended license in Pennsylvania and who refuses a chemical breath test is guilty of a summary offense (upon a first conviction) "and shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for a period of not less than 90 days." 75 Pa.C.S. § 1543(b)(1.1)(i). We share the Commonwealth's view that the phrase "not

less than 90 days," by its plain terms, establishes a mandatory *minimum* term below which a sentencing court may not fall when imposing a penalty for a first-time DUS offender. *See O'Brien*, 514 A.2d at 620. We also recognize, as do the parties, that the statute is silent as far as the available maximum sentence is concerned.

Concluding that the duty falls to this Court to fill that gap by inferring a particular duration of punishment, the Commonwealth submits that a six-month maximum is appropriate for several reasons. Adopting the Superior Court's analysis, the Commonwealth points to Section 6503 of the Vehicle Code as a potential gap-filler.[11]

---

[11] Section 6503 ("Subsequent convictions of certain offenses") provides:

**(a) General offenses.**—Every person convicted of a second or subsequent violation of any of the following provisions shall be sentenced to pay a fine of not less than $200 nor more than $1,000 or to imprisonment for not more than six months, or both:

> Section 1543(a) (relating to driving while operating privilege is suspended or revoked) except as set forth in subsection (a.1).
>
> Section 3367 (relating to racing on highways).
>
> Section 3734 (relating to driving without lights to avoid identification or arrest).
>
> Section 3748 (relating to false reports).

**(a.1) Certain repeat offenses.**—A person convicted of a sixth or subsequent offense under section 1543(a) shall be sentenced to pay a fine of not less than $1,000 and to imprisonment for not less than 30 days but not more than six months.

**(b) Driving without a license.**—Every person convicted of a second or subsequent violation of section 1501(a) (relating to drivers required to be licensed) within seven years of the date of commission of the offense preceding the offense for which sentence is to be imposed shall be sentenced to pay a fine of not less than $200 nor more than $1,000 or to imprisonment for not more than six months, or both.

75 Pa.C.S. § 6503.

Section 6503 indeed sets a maximum term of six months' imprisonment, but that punishment is applicable only to "a second or subsequent violation" of certain enumerated offenses—not including subsection 1543(b)(1.1)(i) of the DUS statute. Because the instant case relates to a *first* DUS offense, of a class not enumerated in Section 6503, the Commonwealth's reliance upon that provision is misplaced.

The Commonwealth then relies heavily upon this Court's decision in *Bell*, which, at first glance, lends some credence to its view that sentencing terms can be inferred. There we rejected a vagueness challenge to 18 Pa.C.S. § 7508(a)(1)(ii)-(iii), a mandatory minimum sentencing statute for marijuana trafficking that similarly lacked a maximum term. The provisions at issue mandated minimum terms of three or five years' imprisonment for violations of clauses (12), (14), or (30) of subsection (a) of the Controlled Substance, Drug, Device and Cosmetic Act ("Drug Act"), 35 P.S. § 780-113, dependent upon the weight of the drugs possessed for delivery by the offender. *Bell*, 645 A.2d at 214-15. A separate provision of the Drug Act commanded that any person who violated those same clauses "shall be sentenced to imprisonment not exceeding five years." 35 P.S. § 780-113(f)(2). Consequently, the Court was forced to acknowledge the "alleged inconsistency" arising from these conflicting sentencing provisions, which it concluded were "incompatible with" the minimum-maximum rule contained in Section 9756(b) of the Sentencing Code. *Bell*, 645 A.2d at 215.

To resolve these conflicts, the *Bell* Court simply sidestepped the rule. The Court reasoned that Section 9756(b) "is a statutory and not a constitutional provision," and therefore would not bar a sentence of three to five years' imprisonment or a flat sentence of five years given the exception it deemed "carve[d]" out by the prefatory language in Section 7508(a) ("**General rule.**—Notwithstanding any other provision of this or any other act to the contrary . . ."). *Id.* at 217. Relying upon the legislative history of Section 7508,

the Court found "this interpretation to be the most desirable since it further[ed] the intent of the legislature to invoke harsher minimum penalties for drug trafficking, without raising constitutional concerns." *Id.* Having divined this punitive intent from the legislative record, the Court held that the absence of maximum sentencing terms from Section 7508 would not require the statute to be invalidated where those terms—namely, a five-year maximum for each of the crimes at issue—"can be reasonably implied when that section is read together with [Section] 113(f)(2) of the Drug Act." *Id.* at 218.

We have not applied *Bell*'s holding beyond the particular circumstances of the Drug Act's mandatory sentencing scheme. *See Commonwealth v. Ramos*, 83 A.3d 86, 92-93 (Pa. 2013) (holding that the general rule regarding minimum and maximum sentences must yield to 42 Pa.C.S § 9712.1(a)'s offense-specific five-year mandatory minimum, which "applies only to the subset of criminals who have been convicted of 35 P.S. § 780-113(a)(3) while in physical possession of a firearm"). And we decline to do so today, as attempting to infer a maximum term here "would force us to engage in sheer speculation as to which sentence the General Assembly intended." *Bell*, 645 A.2d at 217. As an initial matter, there is no similar prefatory language in the DUS statute by which to carve out an exception à la *Bell*. We must therefore assume that the Sentencing Code's general rule of minimum-maximum sentencing applies to the pertinent section of the Vehicle Code at issue. If we were to infer a statutory maximum of six months as the Commonwealth requests, however, then "not less than" necessarily would also mean "not more than" ninety days in order to comply with the general rule, in which case the limiting phrase would be superfluous. A similar problem would arise if we were to infer any maximum below six months, as it immediately would run counter to the general rule. Given the absence of a statutory hook by which to fashion a principled exception to the rule in that manner, that result would be particularly untenable.

Moreover, contrary to the Commonwealth's suggestion, we do not read Section 9756(c.1) of the Sentencing Code as expressly sanctioning the imposition of flat sentences for violations of the Vehicle Code. That provision merely permits the imposition of a sentence of imprisonment without parole where, among other things, "the maximum sentence of total confinement imposed on one or more indictments to run consecutively or concurrently total 90 days or less." 42 Pa.C.S. § 9756(c.1)(2). Notwithstanding its applicability in certain circumstances where the Vehicle Code (and other statutes) expressly provides for sentences of incarceration of ninety days *or less*—which is not the case under subsection 1543(b)(1.1)(i)'s mandatory *minimum* sentencing requirement— Section 9756(c.1) does not constitute a standalone exception to the general rule of minimum-maximum sentencing specifically applicable here. And even though the Commonwealth is correct that this Court affirmed a ninety-day flat sentence for DUS in *Commonwealth v. Koskey*, we note that no challenge was raised to the legality of that sentence or to the portion of the sentencing statute providing for it. As such, *Koskey* does not resolve the question now before us. Nor would resolution of that question be helpful here, where no flat sentence was imposed.[12]

Finally, the Commonwealth proffers that the six-month maximum should be assumed based upon conditions that the General Assembly has imposed in roughly

---

[12] Although we have not been asked to review the legality of flat sentencing under these circumstances, we are cognizant of the conflicting Superior Court precedents on this matter, the resolution of which must await an appropriate case or controversy. *Compare Commonwealth v. Klingensmith*, 650 A.2d 444, 447-48 (Pa. Super. 1994) (holding that a prior version of Section 1543(b) of the Vehicle Code "implicitly creates an exception to" the minimum-maximum sentence rule "by specifically authorizing a trial court to impose a flat minimum mandatory sentence of ninety days for driving with a suspended license when the license was suspended as a result of a prior DUI conviction"), *with Commonwealth v. Postie*, 110 A.3d 1034, 1044-45 (Pa. Super. 2015) (holding that a flat sentence of four months' imprisonment for a conviction under Section 1543(a) of the Vehicle Code violated the minimum-maximum sentencing rule).

comparable contexts—*i.e.*, six months for summary offenses where the right to a jury is not afforded. *See Sperry*, 577 A.2d at 605 n.3. Once again, we disagree. Though it appears likely that the General Assembly is constrained to cap the punishment for summary DUS offenses at six months' imprisonment given the constitutional restrictions outlined by the Supreme Court in *Baldwin*, we decline to infer that limit inasmuch as the Legislature is not required to set the maximum sentence that high. It is neither the judiciary's role, nor within our constitutional authority, to fill gaps in sentencing statutes resulting from the General Assembly's omissions. *See Derhammer*, 173 A.3d at 732 (Wecht, J., concurring) ("Filling such gaps is an inherently legislative function, which the judiciary should leave to those who have been elected by the people to write the laws.").

In order to afford sufficient notice for due process purposes, a sentencing statute "must specify the range of available sentences with 'sufficient clarity.'" *Beckles v. United States*, ___ U.S. ___, 137 S.Ct. 886, 892 (2017) (quoting *Batchelder*, 442 U.S. at 123). As the foregoing analysis demonstrates, that clarity is lacking here. The statutory history relied upon by the Commonwealth unmistakably reveals the existence of a gap in the DUS statute that has persisted since the inception of paragraph (b)(1.1)(i) nearly two decades ago. We hold that the absence of a maximum term renders the pertinent DUS sentencing provision unconstitutionally vague and inoperable for the time being. We leave it to the General Assembly to remedy this impediment, if it so chooses, either by amending the statute to provide for a maximum term of imprisonment or by expressly permitting flat sentencing within a range not to exceed that maximum sentence.

Accordingly, while we affirm the Superior Court's order upholding Eid's conviction for refusing chemical testing after driving under a suspended license, albeit on alternative grounds, we vacate his sentence of imprisonment for that offense. Because the only punishment that lawfully may be imposed at this time for a violation of DUS pursuant to

subsection 1543(b)(1.1)(i) is the mandatory $1,000 fine, we affirm that portion of Eid's sentence.  The case is remanded to the Superior Court for further proceedings consistent with this opinion.

Chief Justice Baer and Justices Todd, Donohue, Dougherty and Mundy join the opinion.

Justice Saylor files a concurring and dissenting opinion.